CHICAGO, BURLINGTON & QUINCY R. R. CO., PLAINTIFF IN ERROR, V. ROBERT JAMES, DEFENDANT IN ERROR.

[FILED MARCH 20, 1889.]

1. **Railroads:** FENCING: CONSTRUCTION OF STATUTE. Section 1 of the act of 1867 requires every railroad company in the state, within six months after its line of railroad, or any part thereof, is open, to erect and thereafter maintain fences on the sides of said railway, or the part thereof open for use, suitably and am-

ply sufficient to prevent cattle, horses, sheep, and hogs, from getting on the track, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages, etc.

2. ———: ———: ———. The provisions of section 18, chapter 2, Compiled Statutes, defining a lawful fence, apply alone to the inclosing of *lands*, and do not apply to the fencing of a railway. That matter is governed by section 1, article 1, chapter 72, Compiled Statutes.

ERROR to the district court for York county. Tried below before NORVAL, J.

*George B. France,* and *Marquett & Deweese,* for plaintiff in error.

*Montgomery & Giffin,* for defendant in error.

MAXWELL, J.

The defendant in error is the owner of a farm through which the track of the railway belonging to the plaintiff in error is constructed. The trains of the plaintiff in error ran over and killed certain hogs of the defendant in error. The defendant in error thereupon served notice on the plaintiff in error of the destruction of said hogs, and demanded payment therefor. He also served an affidavit setting forth the loss, as required by the statute. The plaintiff in error, however, neglected to pay said loss, whereupon the defendant in error brought an action to recover the value of the hogs destroyed, and on the trial in the court below recovered a verdict and judgment.

The testimony shows that the plaintiff in error had fenced its track at the place where the hogs were killed, with posts and barbed wire, the posts being about sixteen feet apart and four barbed wires being placed thereon, at proper intervals, the one nearest the ground being about eighteen inches therefrom. The plaintiff in error contends that the fence at that point was a lawful one, and

that, therefore, it is not liable.   The controlling question is, What constitutes a suitable and amply sufficient railway fence?

Section 1, article 1, chapter 72, Compiled Statutes, provides, " That every railroad corporation whose lines of road, or any part thereof, is open for use, shall, within six months after the passage of this act, and every railroad company formed, or to be formed, but whose lines are not now open for use, shall, within six months after the lines of such railroad or any part thereof are open, erect and thereafter maintain fences on the sides of their said railroad, or the part thereof so open for use, suitably and amply sufficient to prevent cattle, horses, sheep, and hogs, from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages, with opens, or gates, or bars, at all the farm crossings of such railroads, for the use of the proprietors of the lands adjoining such railroad, and shall also construct where the same has not already been done, and hereafter maintain at all road-crossings now existing, or hereafter established, cattle-guards suitable and sufficient to prevent cattle, horses, sheep, and hogs, from getting on to such railroad, and so long as such fences and cattle-guards shall be made after the time hereinbefore prescribed for making the same shall have elapsed, and when such fences and guards, or any part thereof, is not in sufficiently good repair to accomplish the objects for which the same is herein prescribed, is intended, such railroad corporation and its agents shall be liable for any and all damages which shall be done by the agents, engines, or trains, of any such corporation, or by the locomotives, engines, or trains, of any other corporations permitted and running over or upon their said railroad, to any cattle, horses, sheep, or hogs thereon ; and when such fences and guards have been fully and duly made, and shall be kept in good and sufficient repair, such railroad corporation shall not be liable for any such dam-

ages, unless negligently or willfully done: *Provided, how-ever*, That any person, company, or corporation, owning land adjoining the right of way of any railroad company in this state, and not within the limits of any town, village, or city, and intending to inclose his or their land, or any part thereof that adjoins such right of way or railroad, with a fence, such person, or the secretary of such company or corporation, by direction thereof, may notify in writing such railroad company of such intention, and request such railroad company to build a lawful fence as described in this section, on the line between their railroad and the land intended to be inclosed. Such notice shall definitely specify two points on such line between which points such fence is requested to be erected, and describe the field intended to be enclosed. The railroad company shall, within six months after receiving such notice, cause to be erected the fence required by such notice, and in case of a failure so to do, the party so giving notice as aforesaid may cause such fence to be erected at a reasonable cost and collect the amount thereof from the railroad company so neglecting to erect the fence."

The attorneys for the railway company contend that all that is required is a lawful fence as defined by sec. 18, art. 2, chap. 2, Compiled Statutes, which is as follows: "Such structures as shall be used for a fence, *to inclose lands*, shall be as follows:

"I. A rail fence shall consist of at least six rails, said rails to be secured by stakes at the end of each panel, well set in the ground, with a rider upon said stakes. A board fence shall consist of not less than three boards of at least five inches in width and one inch thick, said boards to be well secured to posts, the posts to be not more than eight feet apart. A rail and post fence shall consist of at least three rails, well secured at each end to posts, and posts to be not more than ten feet apart. A pole and post fence shall consist of not less than four poles,

to be well secured to posts, said posts to be not more than seven feet apart. A wire fence shall consist of at least four wires, of a size not less than number nine fencing wire, to be well secured to posts, said posts to be at no greater distance than one rod from each other; and there shall be placed between every two of said posts one stake or post to which the wire shall be attached.

"II. The fences described in the preceding section shall be at least four and one-half feet in height, and in the construction of said fences the spaces between the boards, rails, poles, and wires, herein provided for, shall not exceed one foot each, measuring from the top.

"III. A hedge fence of osage orange shall consist of at least one row of plants, said plants not to be more than eight inches apart at the surface of the ground, and said hedge shall be such as fence-viewers shall decide a lawful fence. A hedge fence of willow or other trees used for that purpose, shall consist of at least one row of such trees, standing not more than fifteen inches apart at the surface of the ground, and at least two and one-half inches in diameter, and at least six feet in height.

"IV. Fence known as 'Warner's patent,' shall be at least four and a half feet in height, and consist of not less than five boards, said boards to be at least five inches wide, and one inch thick."

It will be observed that the fences described as lawful fences in the section last copied, are such as may be used to inclose lands. It is very evident that this section was not intended to apply to railways. The fence on each side of a railway must be such as is "suitably and amply sufficient to prevent cattle, horses, sheep, and hogs, from getting on the railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages," etc. The act requiring railroads to fence their tracks within six months after the railroad or any part thereof is open for use, was passed in 1867, and has been in force

without material modification from that time until the present. This is a burden which the statute casts upon each railroad company within the state. The statute evidently has two objects: First, to prevent danger to the passengers over the railway and the employes of the company by requiring such a fence on both sides of the railway, as will prevent cattle, horses, sheep, and hogs, from getting on the track and thus endangering the lives or limbs of passengers and employes by throwing the trains from the track; and Second, as a protection to each land owner through whose land the road has been constructed. It is well known that in the early history of the construction of railways in some of the states of this country, there was no statute regulation in regard to the building of fences along the lines of railways; hence, in such states, where stock of the description named got upon the track and was killed or injured, or caused loss by throwing the cars from the track, a large amount of litigation sprung up, involving the rights of the respective parties, which not unfrequently resulted in great injustice. To guard against this result, before any considerable number of miles of railway had been built in the state, the legislature passed the act in question. The railway in this case is shown by the testimony to have been open for use for more than ten years before the cause of action accrued, and the fence inclosing the same is shown to have been wholly inadequate for the purpose of excluding hogs from the track. The judgment of the district court is clearly right, and is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.